IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LLOYD SCHUENKE,

                                               OPINION and ORDER

                  Plaintiff,

                                           13-cv-217-bbc

        v.

WISCONSIN DEPARTMENT OF CORRECTIONS,
GARY HAMBLIN, CHARLES COLE,
BUREAU OF HEALTH SERVICES, JAMES GREER,
LON BECHER, JUDY SMITH, STEVE WIERENGA,
DANIELLE FOSTER, WILLIAM GOLDEN,
COLLEEN JANIKOWSKI, SANDY HENDRICKSON,
THERESA MURPHY and
JANE DOE INMATE COMPLAINT EXAMINER AND NURSES,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Lloyd Schuenke, a prisoner at the Oshkosh Correctional Institution, has filed this civil action alleging that prison officials have denied him adequate treatment for his asthma. Plaintiff seeks leave to proceed with his complaint in forma pauperis. However, because plaintiff has struck out under 28 U.S.C. § 1915(g), he cannot obtain indigent status under § 1915 unless his complaint alleges facts from which an inference may be drawn that he is in imminent danger of serious physical injury.

After applying 28 U.S.C. § 1915(g) to plaintiff's claims, I conclude that his claims about his current care meet the imminent danger standard while his claims about past care do not. I will sever the non-imminent danger claims into a new case and allow him to

proceed with his Eighth Amendment deliberate indifference claims against the prison staff currently responsible for failing to provide him with his asthma medications.  I will deny him leave to proceed on claims for retaliation and violation of Department of Corrections regulations.  Finally, I will deny plaintiff's motions to supplement his complaint.

I draw the following facts from plaintiff's complaint.


ALLEGATIONS OF FACT

Plaintiff Lloyd Schuenke is an inmate at the Oshkosh Correctional Institution.  On December 26, 2008, plaintiff was transferred into the custody of the Wisconsin Department of Corrections custody and placed at the Dodge Correctional Institution.  Plaintiff filled out an "Intake Screening/Medical History" form, stating that he had asthma, frequent severe headaches, chronic back problems, hemorrhoids, mental problems, spondylolthesis, scoliosis, a loose cap over one of his teeth and eye problems requiring eyeglasses.

On August 23, 2011, plaintiff was transferred to the Oshkosh Correctional Institution.  On September 9, 2011, a self-medication care plan for plaintiff's "moderate persistent" asthma was formulated.  It included three medications.  The plan included air-flow-meter readings indicating green for "all clear," yellow for "caution" and red for "medical alert."  Plaintiff was also given a nebulizer so that he could take one of his medications, albuterol sulfate.

On June 28, 2012, plaintiff had having difficulties breathing after cutting grass.  He used his inhaler the maximum number of times and then was seen by a nurse.  He was given

a day off of work and encouraged to change jobs to avoid exposure to environmental factors.

On August 15, 2012, plaintiff was cutting grass again and started to have trouble breathing. He was allowed to leave his work assignment early by correctional officer Jerry Hicky. Plaintiff told correctional officer Hunt that he was having asthma problems and asked Hunt to call the Health Services Unit, which he did. Plaintiff spoke with a nurse over speakerphone. The nurse told officer Hunt to transport plaintiff to the Health Services Unit. Hunt asked plaintiff what living unit he was from. After plaintiff told Hunt that he was from W-Building, Hunt called officer Juchthurber (who presumably was responsible for W-Building) and told him to arrange for someone to transport plaintiff to the Health Services Unit. Eventually, officer Hicky arrived and was informed about the situation by Hunt. One of the officers told the other "to make sure that he covered his ass" (it is difficult to ascertain from plaintiff's complaint who was speaking). Shortly thereafter, a fellow inmate arrived to transport plaintiff by wheelchair to the Health Services Unit. It took about 30 minutes from the initial call to the Health Services Unit before plaintiff arrived there. Ultimately, plaintiff was examined and charged a $7.50 co-payment, which plaintiff thought was incorrect because it was a work-related problem. The nurse disagreed. Plaintiff signed the co-payment slip and left.

On August 18, 2012, plaintiff filed an inmate grievance challenging the fact that he was charged a medical co-payment for a medical problem that occurred during a work assignment. On October 9, 2012, defendant institution complaint examiner Theresa Murphy issued a ruling stating that she contacted defendant William Golden, who thought

that the co-payment should be refunded, so the business office was contacted about refunding the co-payment. Murphy stated in her decision that lawn mowing was done for the year, but that plaintiff's job would entail shoveling snow in the winter, so he "should think about his job situation and maybe consider seeking different employment due to his health condition."

On October 16, plaintiff submitted a request asking how the investigation was coming along. Defendant Murphy responded by stating that her decision was affirmed on October 18, 2012 and that the charge was reversed. On October 20, 2012, plaintiff received a copy of the reviewer's decision written by defendant Lon Becher affirming the reversal of the charge.

In November 25, 2012, plaintiff had to make eight requests for his asthma medications before receiving them on November 28, 2012.

On March 10, 2013, plaintiff submitted a request to refill his medications. Plaintiff received his Loratadine, but on March 14, his request was returned to him, with a notation that the "order has expired, forwarded to prescriber for renewal." On March 16, 2013, plaintiff resubmitted the refill request, but never received his asthma medications. Since then, plaintiff has suffered several asthma attacks without being able to use medications to alleviate his symptoms. This failure to monitor plaintiff violates Department of Corrections policies and procedures.

OPINION

A.   <u>Imminent Danger</u>

Plaintiff seeks leave to proceed <u>in forma pauperis</u> in this case under 28 U.S.C. § 1915.

However, as stated above, plaintiff has struck out under 28 U.S.C. § 1915(g).  This provision

states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action or
> appeal in a court of the United States that was dismissed on the grounds that
> it is frivolous, malicious, or fails to state a claim upon which relief may be
> granted, unless the prisoner is under imminent danger of serious physical
> injury.

On at least three prior occasions, plaintiff has been denied leave to proceed <u>in forma</u>

<u>pauperis</u> in lawsuits that were legally frivolous: <u>Schuenke v. Wisconsin Dept. of Corrections</u>,

96-C-748 (W.D. Wis. Sept. 30, 1996); <u>Schuenke v. County of Milwaukee</u>, 97-C-46 (W.D.

Wis. Jan. 30, 1997); and <u>Schuenke v. Wisconsin Dept. of Corrections</u>, 98-C-95 (W.D. Wis.

Mar. 23, 1998).

To meet the imminent danger requirement of 28 U.S.C. § 1915(g), a prisoner must

allege a physical injury that is imminent or occurring at the time the complaint is filed and

show that the threat or prison condition causing the physical injury is real and proximate.

<u>Ciarpaglini v. Saini</u>, 352 F.3d 328, 330 (7th Cir. 2003) (citing  <u>Heimermann v. Litscher</u>,

337 F.3d 781 (7th Cir. 2003); <u>Lewis v. Sullivan</u>, 279 F.3d 526, 529 (7th Cir. 2002)).  In

his complaint, plaintiff alleges that his asthma was poorly treated in the past and he is not

receiving his asthma medication.

5

In considering whether plaintiff's complaint meets the imminent danger requirement of § 1915(g), a court must follow the well established proposition that pro se complaints must be liberally construed.  <u>Ciarpaglini</u>, 352 F.3d at 330.  Further, it is improper to adopt a "complicated set of rules [to discern] what conditions are serious enough" to constitute "serious physical injury" under § 1915(g).  <u>Id.</u> at 331.  Given this framework, I conclude that plaintiff's allegations regarding the *current* failure to provide him with asthma medication qualify under the imminent danger standard.

However, plaintiff's claims for *past* harm regarding prison officials' delay in getting him treatment for the August 15, 2012 asthma attack do not qualify under the imminent danger standard.  Nor do his claims for having to make multiple requests for his medication in November 2012 or for being charged a co-payment for his work-related injury.  Because these allegations do not involve imminent danger, plaintiff cannot proceed on these claims <u>in</u> <u>forma</u> <u>pauperis</u>.

It is this court's practice to move forward on imminent danger claims as quickly as possible and, if the complaint survives screening, set expedited briefing on preliminary injunctive relief.  <u>E.g.</u>, <u>Norwood v. Strahota</u>, 08-cv-446 (W.D. Wis. Aug. 11, 2008). Therefore, I will sever plaintiff's non-imminent danger claims into a new case, case no. 13-cv-404-bbc, which he may pursue if he agrees to proceed as a paying litigant by paying a $350 filing fee.  I will give him a short deadline to do so.  If plaintiff chooses to not pursue this case as a paying litigant, the case will be closed and plaintiff will not be responsible for the filing fee.

### B.  Initial Partial Payment

Although I conclude that plaintiff's claims regarding his current treatment satisfy the imminent danger standard, plaintiff has not shown that he qualifies to proceed in forma pauperis from the financial standpoint.  In his motion for leave to proceed in forma pauperis, plaintiff avers that he has not received income for six months and has only a limited amount of funds in his release account.  These statements as well as information from plaintiff's previous numerous cases before the court make it fairly certain that plaintiff does not have the funds to pay the entire filing fee.  However, plaintiff is still required to submit a six-month trust fund account statement so that the court can calculate an initial partial payment of the fee.

Plaintiff's complaint was filed on March 28, 2013.  His trust fund account statement should cover the six-month period beginning approximately September 28, 2012 and ending approximately March 28, 2013.  Once plaintiff has submitted the necessary statement, I will calculate his initial partial payment and advise him of the amount he will have to pay.  Plaintiff should show a copy of this order to prison officials to insure that they are aware they should send a copy of plaintiff's six-month trust fund account statement to this court.

Usually, the court would wait for plaintiff to submit his initial partial payment before screening his complaint.  However, because plaintiff alleges that he is imminent danger of serious physical harm, I will proceed to screen his complaint immediately.  Plaintiff is still required to submit his trust fund account statement and the initial partial payment or the court will consider closing the case for plaintiff's failure to comply with 28 U.S.C. § 1915.

7

C.  Screening Plaintiff's Claims

In screening plaintiff's imminent danger claims, the court must construe the complaint liberally.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, I must dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915(e)(2)(B).

1.  Eighth Amendment

I understand plaintiff to be bringing a claim that prison officials violated his right to medical care under the Eighth Amendment by failing to provide him his asthma medications. A prison official may violate this right if the official is "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person.  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006).  The condition does not have to be life threatening.  Id.  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir.1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825 (1994).  "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures to provide it.  Forbes v. Edgar,

8

112 F.3d 262, 266 (7th Cir.1997).

At this point I conclude that plaintiff has alleged that he has a serious medical need. Asthma may be a serious medical condition, Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001), and at this point plaintiff's allegations are sufficient to proceed.  However, going forward, either at summary judgement or at trial, plaintiff will have to provide facts indicating precisely how how his asthma has affected him or the danger he faces by not having his medications.

It is less clear which defendants are appropriate targets of plaintiff's Eighth Amendment claim.  Although plaintiff names specific defendants with regard to his claims for past harm, he more generally refers to the "Health Services Unit" as the party responsible for failing to provide him with his medication.  Because plaintiff already names "Jane Doe" Health Services Unit nurses as defendants, I will allow him to proceed against these defendants (while acknowledging that it may well be doctors or other staff who failed in their duties).  At the preliminary pretrial conference in this case, Magistrate Judge Stephen Crocker will explain to plaintiff how to use discovery procedures to identify the individuals who failed to take proper action on his requests for medication refill.

I note that plaintiff seems to be attempting to bring claims against supervisory officials at the prison or with the Department of Corrections, as he names several parties and states that "all of the defendants" have "knowingly fail[ed] or refus[ed] to exercise supervisory authority.  However, a supervisor may not be held liable simply because he or she had authority over someone else that violated a prisoner's constitutional rights.  Rather,

9

the plaintiff must show that the supervisor's actions (or failure to act) helped to cause the constitutional violation.  Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).  Plaintiff does not provide any allegations suggesting that supervisory officials took any specific action that harmed him.  Accordingly, plaintiff will not be allowed to proceed on these claims, although supervisory defendants may be added back into the case later when plaintiff discovers the identity of the persons who failed to give him his medication.  Finally, I note that it is appropriate to leave defendant Warden Judy Smith in the case in her official capacity in order to facilitate plaintiff's discovery requests concerning the Doe defendants.

2. Retaliation

Plaintiff attempts to bring a retaliation claim against unnamed defendants for withholding his medication because he complained about his treatment for asthma attacks. To state a claim for retaliation, a plaintiff must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by each defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against him.  Bridges v. Gilbert, 557 F.3d 541, 556 (7th Cir. 2009).

Plaintiff's statements about treatment for his asthma attacks are protected speech. Also, the denial of medications are likely to deter an inmate from making further complaints. However, I conclude that plaintiff fails to satisfy the third element, that his allegations make

10

it plausible to infer that his statements caused the allegedly retaliatory act.  Plaintiff does not point to anything suggesting that a decision on plaintiff's medications was made because of his previous complaints.  Rather, he speculates that this is so.  Unfortunately for plaintiff, pure speculation does not support a retaliation claim.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Atkins v. City of Chicago, 631 F.3d 823, 830-32 (7th Cir. 2011) (to avoid dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level.") (internal quotations omitted).  Accordingly he will not be granted leave to proceed on these claims.

3.  Violations of Department of Corrections policy

Plaintiff seems to bring a claim for prison staff's failure to follow Department of Corrections policy concerning medical care.  Plaintiff does not explain in detail which policies were violated, but it is clear that the department has rules in place to insure that inmates are given adequate medical care.  E.g., Wis. Admin. Code. § DOC 316.03 ("Health services staff shall provide necessary medical, dental or nursing services to an inmate . . . .") However, whether prison officials are enforcing the state policies correctly is irrelevant in this case because there is no indication that the department's polices create a private cause of action for prisoners.  Kranzush v. Badger State Mutual Insurance Co., 103 Wis. 2d 56, 74–79, 307 N .W.2d 256, 266–68 (1981) (right of action to enforce statute or regulation does not exist unless directed or implied by legislature).  If plaintiff believes that defendants are applying department policy improperly, he must file a petition for a writ of certiorari in

state court. <u>Outagamie County v. Smith</u>, 38 Wis.2d 24, 34, 155 N.W.2d 639, 645 (1968) (with respect to laws that are not made enforceable by statute expressly, action is reviewable only by certiorari).  A federal court cannot require state officials to comply with state law. <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984).

### D.  <u>Preliminary Injunctive Relief</u>

Plaintiff's complaint includes requests for immediate injunctive relief.  Under this court's procedures for obtaining a preliminary injunction, a copy of which is attached to this order, plaintiff must file with the court and serve on defendants a brief supporting his claims, proposed findings of fact and any evidence he has to support his request for relief.  He may have until July 1, 2013 to submit these documents.  Defendants may have until the day their answer is due in which to file a response.  I will review the parties' preliminary injunction submissions before deciding whether a hearing will be necessary.

Plaintiff should be aware that the bar for obtaining a preliminary injunction is significantly higher than it is for obtaining leave to proceed.  In his proposed findings of fact, plaintiff will have to lay out the facts of his case in detail, identifying the problems he is suffering from, when and how he sought help and how defendants responded.  Plaintiff will have to show that he has some likelihood of success on the merits of his claim and that irreparable harm will result if the requested relief is denied.  If he makes both showings, the court will move on to consider the balance of hardships between plaintiff and defendants and whether an injunction would be in the public interest, considering all four factors under a

12

"sliding scale" approach.  In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997).

Also, plaintiff should be aware of the consequences facing litigants who abuse the imminent danger exception to their three-strike status.  The only reason that plaintiff has been allowed to proceed in forma pauperis in this case is that his allegations suggest that he was under imminent danger of serious physical injury at the time that he filed his complaint. The "imminent danger" exception under 28 U.S.C. § 1915(g) is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate."  Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002).  In certain cases, it may become clear from the preliminary injunction proceedings that a plaintiff who has already received three strikes under § 1915(g) for bringing frivolous claims has exaggerated or even fabricated the existence of a genuine emergency in order to circumvent the three-strikes bar.  In such a case, this court may revoke its grant of leave to proceed in forma pauperis once it is clear that plaintiff was never in imminent danger of serious physical harm.  Plaintiff would then be forced to pay the full $350 filing fee or have his case dismissed.

## E. Supplements to Complaint

Following the submission of his complaint, plaintiff has filed four documents he titles as motions to add defendants, facts and grounds for litigation.  This is not the appropriate way to amend his complaint, so the motions will be denied.  Both the court and defendants should not have to sift through five separate documents in order to understand plaintiff's

13

allegations, particularly when the case is being severed into two different lawsuits.  Plaintiff

is free to file a new motion to amend his complaint in this case or in case no. 13-cv-404-bbc,

but in doing so he should include all of the allegations relevant to the particular case,

including both the original allegations and any newer allegations he wishes to add.


ORDER

IT IS ORDERED that

1.  Plaintiff Lloyd Schuenke is GRANTED leave to proceed on his Eighth Amendment

deliberate indifference claims against defendants Jane Doe Health Services Unit nurses

regarding his current deprivation of medication.  Defendant Warden Judy Smith will remain

as a defendant in her official capacity for purposes of identifying the Doe defendants.

2.  Plaintiff is DENIED leave to proceed on the following claims regarding his current

deprivation of medication:

> (a) claims that supervisory officials violated his Eighth Amendment rights.

> (b) claims that prison officials retaliated against him.

> (c) violations of Department of Corrections policy.

3.  All defendants other than Smith and the Does are DISMISSED from this lawsuit.

4.  The remainder of plaintiff's claims are SEVERED from this case.  The clerk of

court is directed to file copies of the complaint and this order in case no. 13-cv-404-bbc.

Plaintiff may have until July 1, 2013 to submit the $350 filing fee for that case.

5.  Plaintiff may have until July 1, 2013, in which to submit a certified copy of his

trust fund account statement as discussed above.  If plaintiff fails to respond to this order, I will assume that he wishes to withdraw this action voluntarily.  In that event, the clerk of court is directed to close this case without prejudice to plaintiff's filing his case at a later date.

6.  Plaintiff may have until July 1, 2013, in which to file a brief, proposed findings of fact and evidentiary materials in support of his motion for a preliminary injunction. Defendants may have until the date their answer is due to file materials in response.

7.  Plaintiff's motions to supplement his complaint, dkt. ##5-8, are DENIED without prejudice.

8.  For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court.  Once plaintiff has learned what lawyer will be representing defendants, he should serve the lawyer directly rather than defendants.  The court will disregard any documents submitted by plaintiff unless he shows on the court's copy that he has sent a copy to defendants or their attorney.

9.  Plaintiff should keep a copy of all documents for his own files.  If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

10. Pursuant to an informal service agreement between the Attorney General and this court, copies of plaintiff's amended complaint and this order are being sent today to the Attorney General for service on the state defendants.  Although it is usual for defendants to have 40 days under this agreement to file an answer, in light of the urgency of plaintiff's

allegations, I expect that every effort will be made to file the answer in advance of that deadline.

Entered this 11th day of June, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

16